UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| CECELIA J. GARRETT | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.: _____ |
| | § | |
| TEXAS DEPARTMENT OF AGING | § | JURY REQUESTED |
| AND DISABILITY SERVICES | § | |
| | § | |
| Defendant. | § | |

## ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

**CECELIA J. GARRETT**, Plaintiff in the above entitled and numbered cause, complains of the **TEXAS DEPARTMENT OF AGING AND DISABILITY SERVICES** and files this Original Complaint and Demand for Jury Trial, and in support thereof would respectfully show the Court as follows:

### I.

### PARTIES

1.      Plaintiff Cecelia J. Garrett ("Garrett") is an individual who is a citizen of the State of Texas and resides in Denton County, Texas.

2.      Defendant Texas Department of Aging and Disability Services (the "Agency") is a department of the State of Texas and an employer subject to provisions of the Americans With Disabilities Act of 1990 (the "ADA"), as amended (42 U.S.C. § 12101 *et seq.*).  The Agency can be served with process upon its Commissioner, Chris Traylor, Texas Department of Aging and Disability Services, John H. Winters Human Services Complex, 701 West 51st Street, P.O. Box 149030, Austin, Texas  78714.

## II.

## JURISDICTION

3.      The Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because the claims arise under the ADA.

## III.

## VENUE

4.      Venue of this action is governed by 28 U.S.C. § 1391 and is proper in the Eastern District of Texas because Garrett was employed by the Agency in Denton County, Texas, and the incidents giving rise to this lawsuit occurred in Denton County, Texas.

## IV.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.      Garrett timely filed with the Equal Employment Opportunity Commission (the "EEOC") two charges of discrimination against the Agency, as required under the ADA and/or the Texas Labor Code.   Garrett's charges of discrimination were transferred to the U.S. Department of Justice, Civil Rights Division, which issued Notices of Right to Sue on April 27, 2012 and May 22, 2012.  Attached hereto as Exhibit "A" and fully incorporated herein for all purposes are true and correct copies of the April 27, 2012 and May 22, 2012 Notices.

## V.

## FACTUAL BACKGROUND

6.      Garrett is deaf.  In March 2011, Garrett applied for a position with the Denton State Supported Living Center, which is a division of the Agency.  Specifically, Garrett applied for an MRA-I (Entry Level Direct Care Position) for the day shift from 6 a.m. – 2 p.m. at the Pine Ridge – Residential Care facility in Denton, Texas (the "Unit").  According to the job description, the MRA-I is responsible for the routine and emergency care, treatment, and training of individuals with developmental disabilities, and responsibilities including, but not limited to,

such duties as grooming, bathing, feeding, observing, and interacting with clients therapeutically. The duties are the same regardless of whether one works the day shift or night shift.

7.      On March 15, 2011, Garrett interviewed with Deborah Davis ("Davis"), the supervisor of the Pine Ridge Unit.  The next day, March 16, 2011, Garrett was called to Davis's office where she was informed she had been hired for the MRA-I position working the day shift from 6 a.m. – 2 p.m.  This was confirmed in the offer of employment letter Garrett signed.  Davis told Garrett she would start training orientation on April 1, 2011.

8.      On March 31, 2011, the day before Garrett was to start her training orientation, Davis called Garrett and told her not to go to training orientation and to meet Davis at her office instead.  Garrett met with Davis on April 1, 2011 and Davis explained that Garrett's training orientation had been delayed to April 18, 2011 because she was having problems securing an interpreter.  According to Davis, Garrett was the first person hired with a hearing disability. Davis then told Garrett she was considering placing her in an administrative position working 8 a.m. – 5 p.m.  Davis, however, never mentioned that Garrett might be moved to the night shift.

9.      At the meeting on April 1, 2011, Davis also gave Garrett an accommodation request form to sign, which Davis had completed, to be sent to the Agency's civil rights office. In the accommodation request form, Davis requested accommodations on behalf of Garrett, including a request to complete the PMAB ("Prevention and Management of Aggressive Behavior") without verbally talking through the training.  Davis did not tell Garrett what PMAB meant.

10.     On April 15, 2011, Davis informed Garrett that her training orientation had yet again been delayed to May 2, 2012 due to interpreter issues.  Again, Davis never mentioned anything to Garrett about being assigned to the night shift.

11.     On April 29, 2011, Davis, along with Davis's manager, Dora Tillis ("Tillis") called Garrett via videophone relay and for the first time informed Garret that due to her

disability she could not work the day shift and that she would be required to work the night shift from 10 p.m. – 6 a.m.  Although Garrett told them she did not want to work the night shift, she was told her only option at that point was to work the night shift or not have a job.  Having already been unemployed for a month as a result of the Agency's delay in training Garrett and not telling her until after she had resigned from her prior employment and only the day before training was to begin, Garrett had no choice but to accept the night shift position.

12.   On May 2, 2011, Garrett started her training orientation with the Agency. Initially, Garrett's name was not on the training orientation list so she was instructed to go to the personnel office where Garrett received a confirmation of her offer of employment showing Garrett was hired for the "day" shift.  During training, the Agency refused to provide Garrett with all necessary training, including PMAB training.  Additionally, the Agency refused to allow Garrett to be certified in defensive driving classes because she is deaf despite the fact that Garrett is a licensed driver.

13.   Despite receiving confirmation Garrett was being hired to work the day shift, Davis placed Garrett on the night shift.  While in training, Garrett continued to talk to Davis about her concern with the night shift.  Davis told Garrett she would monitor Garrett for two weeks after her training orientation finished, at which point she would move Garrett to the day shift.

14.   After completing her training and working the night shift for two weeks, Garrett contacted Davis about moving her to the day shift.  Garrett continued to email and call Davis, as well as show up in her office, about switching to the day shift as promised through October 2011 when she was terminated.  Despite Garrett's repeated requests, Davis refused to move Garrett to the day shift as originally represented.

15.   As a result of the Agency's repeated refusal to permit Garrett to work on the day shift as originally hired to do and provide her with all necessary training and reasonable

accommodations, Garrett filed a charge of discrimination against the Agency with the EEOC on October 18, 2011.  Less than two weeks after filing her charge of discrimination with the EEOC, the Agency terminated Garrett in retaliation for Garrett having filed the EEOC Charge of Discrimination.

## VI.

## COUNT ONE

### VIOLATIONS OF THE ADA AND CHAPTER 21 OF THE TEXAS LABOR CODE

16.     Garrett incorporates by reference all of the allegations set forth in paragraphs 1 through 15 above as if fully set forth at this point herein.

### i.   *Disability Discrimination*

17.     Garrett will show that the Agency's aforementioned conduct violates Texas Labor Code Section 21.001 *et seq.* and Title I of the ADA.  The Agency discriminated against Garrett and subsequently discharged Garrett as a result of her disability, and/or record of said disability.  Because she is deaf, Garrett has physical impairments that affect major life activities, and which are permanent and will not improve.  In spite of Garrett's impairment, however, Garrett was qualified to perform her job functions at the Agency.  Additionally, the Agency failed and refused to provide Garrett with all necessary training and reasonable accommodations so she could perform her job on the day shift as originally hired to do.

### ii.   *Retaliation*

18.     As a result of the Agency's refusal to permit Garrett to work the day shift as she was hired to do and provide reasonable accommodations, Garrett filed a charge of discrimination with the EEOC.   The Agency failed to investigate or take any action to correct the discrimination.  Less than two weeks after Garrett filed her charge of discrimination, the Agency retaliated against Garrett by terminating her under false pretenses alleging Garrett was not suited for her assigned position.

*iii.*     ***Damages***

19.     As a direct and proximate result of the Agency's conduct as set forth herein, Garrett has suffered actual and compensatory damages, including, but not limited to back pay, front pay, loss of benefits and loss of enjoyment of life, including emotional pain, suffering, inconvenience, and mental anguish, in an amount within the jurisdictional limits of this Court.

20.     Garrett will further show that the Agency's conduct as alleged herein was intentional and the Agency acted with malice and/or reckless indifference entitling Garrett to compensatory and punitive damages as allowed by Section 21.2585 of the Texas Labor Code and/or the ADA.

## VII.

## ATTORNEYS' FEES AND COSTS

21.     Garrett incorporates by reference all of the allegations set forth in paragraphs 1 through 20 above as if fully set forth at this point herein.

22.     In addition to actual, compensatory, and punitive damages, Garrett seeks to recover her reasonable and necessary attorneys' fees and costs, including reasonable expert witness fees, as permitted under Section 21.259 of the Texas Labor Code and/or the ADA.

## VIII.

## JURY DEMAND

23.     Garrett requests a jury trial.

## IX.

## CONDITIONS PRECEDENT

24.     Garrett incorporates by reference all of the allegations set forth in paragraphs 1 through 23 above as if fully set forth at this point herein.

25.     Garrett has met all conditions precedent to her lawful recovery herein.

## X.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Garrett respectfully prays that the Agency be cited to appear and answer herein and that upon final hearing, Garrett have and recover from the Agency as follows:

a. Back pay and reinstatement and/or front pay within the jurisdictional limits of the Court;

b. Compensation for loss of employee benefits, including medical, dental, life, 401(k), pension, and retirement benefits;

c. Compensatory damages for past and future pecuniary losses, emotional pain, suffering, and inconvenience as allowed by Section 21.2585 of the Texas Labor Code and/or the ADA;

d. Punitive damages as allowed by Section 21.2585 of the Texas Labor Code and/or the ADA;

e. Pre- and post-judgment interest at the highest rates allowed by law;

f. All reasonable and necessary attorneys' fees as specified herein;

g. All costs of court; and

h. Such other and further relief, at law or in equity, to which Garrett is justly entitled.

Respectfully Submitted,

_/s/ Barbara T. Hale_

**BARBARA T. HALE**
State Bar No. 24012762
**JEFFREY D. SMITH**
State Bar No. 24063008
**BLANSCET HOOPER & HALE, L.L.P.**
14285 Midway Road, Suite 400
Addison, Texas  75001
(214) 764-7973
(214) 764-7981 (Telecopy)

**ATTORNEYS FOR PLAINTIFF
CECELIA GARRETT**